Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANNITTA BAILEY, | Case No: |
| Plaintiff, | |
| v. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| SIERRA ONCOLOGY, INC., ROBERT PELZER, GAURAV AGGARWAL, ANDREW ALLEN, MONA ASHIYA, CRAIG COLLARD, JEFFREY H. COOPER, STEPHEN G. DILLY, GEORGIA ERBEZ, CHRISTY OLIGER, and ANDREW SINCLAIR, | |
| Defendants. | |

Plaintiff Annitta Bailey ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

## NATURE OF THE ACTION

1.      This is an action against Sierra Oncology, Inc. ("Sierra" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Sierra by GlaxoSmithKline plc ("GlaxoSmithKline").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, and the Company conducts business in New York City.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff is, and has been at all relevant times hereto, an owner of Sierra common stock.

7.      Defendant Sierra is a late-stage biopharmaceutical company that engages in researching, developing, and commercializing therapies for the treatment of patients with

hematology and oncology needs. The Company is incorporated in Delaware. The Company's common stock trades on the NASDAQ under the ticker symbol, "SRRA."

8.    Defendant Robert Pelzer ("Pelzer") is Chairman of the Board of the Company.

9.    Defendant Gaurav Aggarwal ("Aggarwal") is a director of the Company.

10.    Defendant Andrew Allen ("Allen") is a director of the Company.

11.    Defendant Mona Ashiya ("Ashiya") is a director of the Company.

12.    Defendant Craig Collard ("Collard") is a director of the Company.

13.    Defendant Jeffrey H. Cooper ("Cooper") is a director of the Company.

14.    Defendant Stephen G. Dilly ("Dilly") is President, Chief Executive Officer, and a director of the Company.

15.    Defendant Georgia Erbez ("Erbez") is a director of the Company.

16.    Defendant Christy Oliger ("Oliger") is a director of the Company.

17.    Defendant Andrew Sinclair ("Sinclair") is a director of the Company.

18.    Defendants Pelzer, Aggarwal, Allen, Ashiya, Collard, Cooper, Dilly, Erbez, Oliger, and Sinclair are collectively referred to herein as the "Individual Defendants."

19.    Defendants Sierra and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

20.    On April 13, 2022, Sierra and GlaxoSmithKline announced that the companies had entered into an agreement under which GlaxoSmithKline would acquire Sierra for $55.00 per share of common stock in cash. The press release announcing the Proposed Transaction states, in pertinent part:

**GSK Reaches Agreement to Acquire Late-Stage Biopharmaceutical Company Sierra Oncology For $1.9bn**

- Sierra Oncology's differentiated momelotinib has the potential to address the critical unmet medical needs of myelofibrosis patients with anaemia
- Momelotinib complements GSK's existing expertise in haematology, with Sierra Oncology anticipating US regulatory submission in Q2 this year and EU submission in the second half of 2022
- Sales contribution expected to start in 2023 with significant growth potential thereafter
- Supports development of strong portfolio of new specialty medicines and vaccines

April 13, 2022 02:05 AM Eastern Daylight Time

LONDON--(BUSINESS WIRE)--GlaxoSmithKline plc (LSE/NYSE: GSK) and Sierra Oncology, Inc (Nasdaq: SRRA) today announced that the companies have entered into an agreement under which GSK will acquire Sierra Oncology, a California-based, late-stage biopharmaceutical company focused on targeted therapies for the treatment of rare forms of cancer, for $55 per share of common stock in cash representing an approximate total equity value of $1.9 billion (£1.5 billion).

\*       \*       \*

**Financial considerations**

Under the terms of the agreement, the acquisition will be effected through a one-step merger in which the shares of Sierra Oncology outstanding will be cancelled and converted into the right to receive $55 per share in cash. Subject to customary conditions, including the approval of the merger by at least a majority of the issued and outstanding shares of Sierra Oncology, and the expiration or earlier termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, the transaction is expected to close in the third quarter of 2022 or before.

The per share price represents a premium of approximately 39 per cent to Sierra Oncology's closing stock price on 12 April 2022 and a premium of approximately 63 per cent to Sierra's volume-weighted average price (VWAP) over the last 30 trading days. Sierra Oncology's Board of Directors has unanimously recommended that Sierra's stockholders vote in favour of the approval of the merger. Additionally, stockholders of Sierra Oncology holding approximately 28 per cent of Sierra's outstanding shares, have agreed to vote their shares in favour of approval of the merger.

GSK will account for the transaction as a business combination and expects it to be accretive to adjusted EPS in 2024, the expected first full year of momelotinib's

sales. New GSK reaffirms its full-year 2022 guidance, the medium-term outlook for 2021-2026 of more than 5% sales and 10% adjusted operating profit CAGR* at CER**, and long-term sales ambition.

The value of the gross assets of Sierra Oncology to be acquired (as of 31 December 2021) is $109 million (£83 million at the rate of £1 = $1.312, being the 31 March 2022 spot rate). The net losses of the business were $95 million for the 12 months ended 31 December 2021 (£70 million, at the rate of £1 = $1.38, being the average rate for the period).

* CAGR: Compound Annual Growth Rate; **CER: Constant Exchange Rate

**Advisors**

PJT Partners is acting as financial advisor and Cleary Gottlieb Steen & Hamilton LLP is serving as legal counsel to GSK in connection with the transaction. Lazard is acting as financial advisor and Wilson Sonsini Goodrich & Rosati is serving as legal counsel to Sierra Oncology.

**About Sierra Oncology**

Sierra Oncology is a late-stage biopharmaceutical company based in San Mateo, California, on a mission to deliver targeted therapies that treat rare forms of cancer. In addition to momelotinib, the pipeline consists of two assets in phase I SRA515 and SRA737. SRA515 is a selective bromodomain-containing protein 4 (BRD4) bromodomain and extra-terminal domain (BET) inhibitor with a novel bivalent binding mode that inhibits both protein bromodomains, and SRA737 is a novel checkpoint kinase 1 (CHK1) inhibitor.

21.     On May 2, 2022, Defendants caused to be filed with the SEC a Schedule 14A Preliminary Proxy Statement (the "Proxy Statement") pursuant to Section 14(a) of the Exchange Act in connection with the Proposed Transaction.

**B.  The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

22.     The Proxy Statement, which recommends that Sierra shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Sierra's financial projections; (ii) the financial analyses performed by the Company's financial advisor, Lazard Frères & Co. LLC ("Lazard"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Lazard; and (iv) potential conflicts of interest involving Company

insiders.

23.     The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Recommendation of the Sierra Oncology Board and Reasons for the Merger; (ii) Opinion of Lazard Frères & Co. LLC; and (iii) Certain Unaudited Prospective Financial Information.

24.     Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Sierra shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

**1.    Material Omissions Concerning Sierra's Financial Projections**

25.     The Proxy Statement omits material information concerning Sierra's financial projections.

26.     With respect to Sierra's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying the projections; (2) the Company's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

27.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of Sierra and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

28.    When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

29.    The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2.    Material Omissions Concerning Lazard's Analyses

30.    In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Lazard.

31.    The Proxy Statement fails to disclose the following concerning Lazard's "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates, growth rates, and multiples used in the analysis; (2) the terminal values of Sierra; and (3) the range of enterprise values for Sierra.

32.    With respect to Lazard's "*Selected Public Companies Analysis*" and "*Selected*

---

[1] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 12, 2022) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

*Precedent Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each company and transaction Lazard observed in its analyses.

33.     With respect to Lazard's "*Premia Paid Analysis*," the Proxy Statement fails to disclose the transactions observed and the premiums paid therein.

34.     The Proxy Statement fails to disclose the following concerning Lazard's "*Research Analyst Price Targets*" analysis: (1) the individual price targets observed by Lazard in its analysis; and (2) the sources thereof.

35.     The valuation methods, underlying assumptions, and key inputs used by Lazard in rendering its purported fairness opinion must be fairly disclosed to the Company's shareholders. The description of Lazard's fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses.

36.     Without the information described above, the Company's shareholders are unable to fully understand Lazard's fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**3. Material Omissions Concerning Potential Conflicts of Interest Involving Lazard**

37.     The Proxy Statement omits material information concerning potential conflicts of interest involving Lazard.

38.     The Proxy Statement fails to disclose the timing and nature of the past services that Lazard and/or its affiliates provided to Sierra and/or its affiliates, including the amount of compensation Lazard received or expects to receive for providing each service within the past two years of the date of its fairness opinion. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of

all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

39.    Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

40.    The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

41.    The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

42.    The Proxy Statement fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

43.    Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

44.    The above-referenced omitted information, if disclosed, would significantly alter

the total mix of information available to the Company's shareholders.

<u>**COUNT I**</u>
**For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder**
<u>**Against All Defendants**</u>

45.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

46.     During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

47.     Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

48.     The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

49.     By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50.     Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.     The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements

or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

55.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

56.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.    Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D.      Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.      Granting such other and further relief as the Court may deem just and proper.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a trial by jury.

Dated: May 12, 2022                          Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
        zhalper@halpersadeh.com

*Counsel for Plaintiff*